BOROWICZ and wife, Plaintiffs, vs. HAMANN and others, Defendants. [Two appeals.]

*May 3—June 20, 1927.*

*Conspiracy: Nature of proof: Evidence: Sufficiency: Trial: Court reducing damages and directing judgment: New trial: Constructive denial.*

1. In an action at law for damages resulting from a conspiracy to defraud, it was error for the court to reduce the damages fixed by the jury and direct an absolute judgment for the amount so fixed by the court, such action being equivalent to depriving the plaintiffs of the right to trial by jury. p. 325.
2. Where defendants seasonably moved to set aside the verdict and for a new trial, the failure of the court to act on such motion within the time prescribed by sec. 270.49, Stats., operated as a constructive denial of the motion, but did not deprive the court of jurisdiction to review the question whether the verdict was supported by the evidence. p. 326.
3. While conspiracy may be established by inference and most frequently cannot be proved directly, the evidence in this case (detailed in the opinion) is *held* insufficient to show any conspiracy as between defendants who have appealed from the judgment or to show that plaintiffs relied upon any representations made by said defendants as regards the condition of property received in an exchange. pp. 331, 333.

APPEAL from a judgment of the circuit court for Brown county: HENRY GRAASS, Circuit Judge. *Reversed, with directions.*

The matters involved here were once presented to this

court and the case reported in 189 Wis. 212, 207 N. W. 426. Upon return of the record to the circuit court for Brown county the trial court, being of the opinion that the damages were excessive, reduced the damages as found by the jury to $4,000 and gave plaintiffs judgment for that sum and denied the defendants' motion respecting the fourth, fifth, sixth, seventh, eighth, and ninth questions of the special verdict. From the judgment entered accordingly the plaintiffs appeal.

The defendants *A. C. Hamann, Scheuer & Tiegs, Inc.,* and *Joseph F. Scheuer* served notice of review under the statute, so that as to the plaintiffs and the appealing defendants the entire matter is here for consideration upon the original record, supplemented by the proceedings had pursuant to the mandate of this court.

For the plaintiffs there was a brief by *Otto P. Lehner* and *Lehner & Lehner* of Oconto Falls, and oral argument by *Philip Lehner* of Princeton.

For the defendants there was a brief by *A. W. Foster* of Milwaukee, attorney, and *Minahan & Duquaine* of Green Bay, of counsel, and oral argument by *Eben R. Minahan.*

ROSENBERRY, J. We shall not make a restatement of the matters covered in the former opinion, to which reference is hereby made, but will state such additional facts as are necessary to a consideration of the questions presented for review.

The first contention of the plaintiffs here is that, this being an action at law, the court erred in reducing the damages fixed by the jury and in directing an absolute judgment for the amount so fixed by the court, the contention being that the plaintiffs are thus deprived of the right of trial by jury. In this contention plaintiffs are undoubtedly right. See *Campbell v. Sutliff, post,* p. 370, 213 N. W. 374.

It is next argued that, the court having failed to set aside the verdict of the jury within sixty days, the respondents are not entitled to a review of the questions whether or not

the verdict is supported by the evidence or whether the court erred in failing to direct a verdict, and that as a necessary consequence the judgment entered below must be reversed and judgment must be directed in accordance with the verdict.

The defendants in this case seasonably made a motion to set aside the verdict and for a new trial. The failure of the court to act within the time prescribed by sec. 270.49, Stats., did not deprive the court of jurisdiction, as is argued here, but operated as a constructive denial of the motion. It would be clearly unreasonable to hold that a party who has done everything possible for him to do is deprived of a right of review in this court because of the failure of the trial court to act seasonably. The appealing defendants, having made a timely motion to set aside the judgment and for a new trial, are on appeal entitled to a review of every question which they would have been entitled to have reviewed had the court itself denied their motion.

This brings us to a consideration of the case upon its merits. The plaintiffs are husband and wife and were at the time of the trial about sixty-four years of age. They were natives of Poland and came to this country in 1885. *Mrs. Borowicz* could not read nor write nor understand English and testified through an interpreter. *Mr. Borowicz* was able to speak English, had worked in Milwaukee for a period of about eight years as a common laborer, and in the nineties removed to Brown county, where he purchased a small farm. He bought and sold several farms, and finally in 1919 purchased the farm in question for a cash consideration of $20,500. The farm appears to have been a good, improved farm, and the plaintiff *Borowicz* claims that he was offered $22,000 in cash for the property just before the trade. The farm consists of 163 acres with farm buildings, the usual farm equipment including machinery and stock. The personal property was mortgaged for $1,800 and was worth an amount considerably in excess of that. *Borowicz*

conceived the idea of exchanging his farm for income-producing property in the city, and at the suggestion of his son-in-law one Fournier was engaged by *Borowicz* to conduct the transaction. Fournier had no car and arranged with one McKenna, then in the employ of the defendant W. P. Meachem, a real-estate dealer, to take the parties to Milwaukee in McKenna's car, the arrangement being that Fournier and McKenna were to receive two per cent. of the valuation fixed upon the farm for trading purposes (which was $30,000), or $600, in the event that a satisfactory exchange was made. Whether this arrangement was made before or immediately after the return from the trip to Milwaukee is not clear. *Borowicz's* agent then wrote to *Scheuer & Tiegs, Inc.,* asking whether or not they could line up something in the way of flats for four different farms, among them a 163-acre improved farm, price $30,000, and advised *Scheuer & Tiegs, Inc.,* that he was coming to Milwaukee in a few days with the owners. There is not the slightest evidence in the record that any of the persons who acted as agent for *Borowicz* had ever had any previous connection with *Scheuer & Tiegs, Inc.* Pursuant to the arrangement made by Fournier, Fournier, McKenna, and *Mr. Borowicz* went to Milwaukee May 23, 1921. Upon their arrival in Milwaukee *Mr. Borowicz* went to stay over night with his brother-in-law, who owns a shoe store, and told him he was there to look over some Milwaukee property. The next morning Fournier and McKenna called for him and they went to the office of *Scheuer & Tiegs, Inc.,* and there met *Mr. Scheuer.* They explained to him the situation of the *Borowicz* farm and then *Scheuer,* McKenna, Fournier, and *Borowicz,* and a stranger who was also interested in the purchase of Milwaukee property, went in an automobile and looked at two or three properties, but *Borowicz* declined to consider the purchase of any property which included stores. *Scheuer* then showed them the building owned by *Mr. Hamann* on Washington street. *Scheuer*

then told *Borowicz* and his agents that the property pro-
duced a rental of $208 per month and that it was mortgaged
for $16,000.   There is some dispute in the evidence as to
the reason why *Borowicz* did not examine the interior of
the property.   He says that it was because *Mr. Scheuer* rep-
resented that the property was rented by rich people who
did not want to be disturbed by people going through the
building.   However, the rents paid by each tenant indicated
that they were far from rich.   Upon their return to *Scheuer's*
office a trade was discussed and *Borowicz* indicated a de-
sire to exchange properties.   *Scheuer* then drafted an ex-
change contract by the terms of which the *Borowicz* farm
was to be exchanged for the *Hamann* property.   Apparently
the contract was prepared by *Scheuer* and left by him at his
office thereafter to be executed by *Borowicz*.   It is undis-
puted that *Borowicz* knew that the contract of exchange was
not binding until signed by his wife.   *Borowicz* returned to
*Scheuer's* office after the noon hour with the understanding
on *Scheuer's* part that *Borowicz* was to be taken by Fournier
and McKenna to the *Hamann* premises and was then to make
an examination, return to Brown county, have the exchange
contract signed by his wife, and, upon *Scheuer* being notified
to that effect, *Scheuer* was to come to Brown county, ex-
amine the *Borowicz* farm, and the trade was to be concluded.
During the noon hour *Borowicz* had talked the deal over
with his brother-in-law.   After the noon hour *Borowicz,*
Fournier, and McKenna came to *Scheuer's* office.   *Scheuer*
was not there and Fournier and McKenna then took *Boro-
wicz* direct to Green Bay, giving him no opportunity to ex-
amine the *Hamann* property.   Upon *Borowicz's* return to
his home and upon consultation with his wife he seems to
have become doubtful as to the advisability of making the
trade.   He testified: "After my wife signed the contract, I
got scared and I grabbed the contract and I gave it to my
wife back again."   It appears from his testimony that he
destroyed the contract.   However that may be, another copy

of the contract was produced, and finally, after several days' solicitation by his agents, *Borowicz* and his wife delivered to them a signed contract.  *Scheuer* was then notified of that fact, and some ten days or two weeks after called at the *Borowicz* farm and examined the same.  After his examination *Scheuer* returned to Milwaukee and advised *Hamann* of the situation and the defendant *Hamann* went to inspect the *Borowicz* farm.  Abstracts were exchanged, some criticism was made of the abstract of the *Borowicz* farm, and on June 20th *Scheuer* wrote Fournier that the papers had been prepared and that *Scheuer* and *Hamann* would be in Green Bay Wednesday morning, June 22d.  In the meantime the signed copy of the contract had remained in the possession of *Borowicz* or his agents.  On the 22d a further examination was made of the *Borowicz* farm.  Finally deeds were prepared and exchanged, interest and insurance computed to June 10, 1921, and upon the adjustment *Borowicz* was found to owe *Hamann* $200.49.  *Hamann* paid *Scheuer & Tiegs, Inc.,* their commission; he paid no commission to any one else, nor did they divide the commission with any one else.  *Borowicz's* agents received their entire compensation from *Borowicz*.  About a week after the delivery of the deeds *Hamann* returned to the farm and employed *Borowicz* to run it until it should be sold.  The farm was immediately listed for sale and was sold in the latter part of August of the same year, *Borowicz* continuing to occupy and operate it until the time of its sale.  Upon the exchange of properties being completed *Borowicz* employed *Scheuer & Tiegs, Inc.,* to collect his rents and manage his Milwaukee property for him.  He had at that time no present intention of occupying it himself.  *Scheuer & Tiegs, Inc.,* managed the property, collected the rents, paid the monthly instalments on the mortgage, rendering accurate statements of their doings down to the time that *Borowicz* made an exchange of the property to one Dolata, first discharging the *Borowicz* note to *Hamann* given at the time of the exchange

in the sum of $200.49. The deal with Dolata fell through, and on October 4th *Borowicz* so advised *Scheuer & Tiegs, Inc.,* and directed them to continue as before. In November, through the efforts of another agent, Matecki, *Borowicz* began negotiations with one Vandermuelen for the exchange of the Milwaukee property for a farm, the trade being completed about December 1st. The transaction with Vandermuelen resulted in a suit brought by *Borowicz* to cancel and set aside the conveyance of the *Hamann* property to Vandermuelen, in which *Borowicz* alleged "that Vandermuelen and Matecki had falsely represented to him [*Borowicz*] that the Milwaukee property was then in a dangerously dilapidated and run-down condition and that it was then mortgaged far in excess of its value, whereas the Milwaukee property was not in a dilapidated and run-down condition but was worth $23,000."

This in bare outline is a history of the transaction. The case was submitted to the jury upon a special verdict and the jury found that the defendants *Scheuer & Tiegs, Inc., A. C. Hamann,* and James McKenna conspired to defraud the plaintiff. The jury further found that *Scheuer & Tiegs, Inc., A. C. Hamann,* and James McKenna falsely represented that the Milwaukee property was worth $33,000; that the interior of the building was all in good condition; that it was income-producing property which would yield plaintiff over and above expenses $100 a month to live on; that such representations were made for the purpose of inducing plaintiffs to make the exchange, and that the representations so made were false. Ten jurors were of the view that under the circumstances the plaintiff ought to have relied upon the representations, found the reasonable market value of the plaintiff's farm at $21,000, and the plaintiff's personal property $4,000; the reasonable market value of the Milwaukee property in June, 1921, $17,000; and that if the Milwaukee property had been as represented its value would have been

$27,000.   Upon this verdict judgment was entered as already indicated in the previous statement of facts in this opinion.

There is not the slightest evidence in this case to sustain the finding of the jury that the defendants *Hamann, Scheuer & Tiegs, Inc.,* and the defendant James McKenna ever entered into a conspiracy or ever conspired to defraud the plaintiffs.   There was no concert of action.   It is not claimed that there was any express understanding.   There was no division of proceeds or any other indicia of a fraudulent conspiracy.   The finding as to conspiracy should have been set aside upon any possible theory of the case.   The remaining findings of the jury are quite clearly colored by, if not the necessary result of, the finding of conspiracy, so that in any event the judgment in this case must be reversed.   While conspiracy may be established by inference and it most frequently cannot be proved by direct evidence, there must be some basis upon which a finding to that effect may rest. It stands undisputed in the evidence that *Borowicz* employed Fournier as his agent, that Fournier then brought McKenna into the transaction, that Meacham was an associate of the defendants Frank Dulik and James McKenna, and that the defendant Dulik was employed by McKenna and his associate to procure the signature of *Mrs. Borowicz* to the contract prepared by *Scheuer*.   There is not a scintilla of evidence that there was any communication between plaintiff and *Scheuer* after plaintiff left *Scheuer's* office with the understanding that plaintiff was to return and procure the wife's signature to the contract prepared by *Scheuer* until Fournier telephoned *Scheuer* that *Mrs. Borowicz* had signed the contract.   In the meantime *Borowicz* had repented of the deal, had refused to deliver the contract, and had torn up the first copy of the contract signed by his wife.   To say that he thereafter relied upon any statement made by *Scheuer & Tiegs* is to ignore the necessary implication which must be drawn

from the undisputed facts. It was wholly through the efforts of Fournier and his associates that the signatures of *Borowicz* and his wife were finally secured. *Borowicz* was not a simple-minded, unsophisticated farmer,—he understood business well enough to fix a high trading value upon his farm property. *Borowicz* had lived in Milwaukee eight years and there purchased land and built a home and sold it, making $300 in the transaction, had exchanged property in Brown county a number of times, always very much to his advantage. Upon one farm he ran and operated a saloon for ten years, served three times as town clerk, and was upon the whole a man of more than average experience. He was shrewd and resourceful. That his own agents, in order to secure their commission, were guilty of fraud if not duress there can be no doubt, but that they acted in concert with *Hamann* or *Scheuer,* or *Scheuer & Tiegs, Inc.,* there is not the slightest evidence. Their motive was plain. They wished to secure their commission. The false representations found by the jury to have been made are (1st) that the property would leave *Borowicz* net $100 a month on which to live. Under the mortgage which was upon the Milwaukee property, the owner was obligated to pay $100 a month and interest. The income from the property was sufficient to discharge this obligation and something besides. The whole circumstances were made known to *Borowicz,* and the fact that he was adding $100 a month to his capital account rather than living upon it can scarcely be said to amount to a false representation. It was a matter of plain inference from the figures which were truthfully disclosed to him that the income was not sufficient to pay the $100 and in addition provide $100 for living expenses. The whole income was stated to be $208 per month.

(2d) It is further claimed that the property was represented to him as being in good condition. There is nothing to indicate that it was not in such condition as property of that class is ordinarily found. A subsequent purchaser spent

$3,000 upon the property and increased her rentals to a sum exceeding $400 per month, which indicates that the property could not have been badly run down or in a dilapidated condition.

Upon the question of value we shall not attempt to reconcile the evidence. The trial court was of the opinion that under any view of the evidence the damages could not exceed $4,000. It was quite apparent that *Borowicz* exchanged a farm which was then of diminishing value for a city property the value of which was increasing. He was shrewd enough to foresee in 1921 the conditions which have since obtained. In addition to that he made no complaint or objection to the transaction for nearly two years, this suit having been begun in April, 1923. Within a few months after he acquired the Milwaukee property *Borowicz* exchanged it for other property, and from the complaint in that action it appears that he must have investigated, and at that time every material fact that was afterward discovered with reference to the Milwaukee property must have been brought to his knowledge. Yet he made no complaint to any one for over a year and three months—a very significant circumstance taken in connection with the other facts and circumstances surrounding the transaction. The uncontradicted evidence in the case shows that *Borowicz* did not rely upon the representations made to him by the appealing defendants, and he cannot for that reason recover in this action. Whatever injury the plaintiffs have sustained is not by reason of any fraudulent conduct on the part of the appealing defendants, but by reason of the fraud and misconduct of agents of their own choosing, who take no appeal in this case from the judgment rendered against them.

*By the Court.*—That part of the judgment appealed from is reversed, and cause remanded with directions to dismiss the complaint as to the defendants *A. C. Hamann, Scheuer & Tiegs, Inc.,* and *Joseph F. Scheuer.*